**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARBARA A. NICHOLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 13-01502 (RDM) |
| | ) |
| THOMAS VILSACK, SECRETARY | ) |
| UNITED STATES DEPARTMENT OF | ) |
| AGRICULTURE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Barbara Nichols, proceeding *pro se*, is an African-American woman who worked as an investigator at the Animal and Plant Health Inspection Service ("APHIS") of the United States Department of Agriculture ("USDA"). *See* Dkt. 1 at 1 (Compl. ¶ 2). At the time she began work at APHIS, Plaintiff was approximately 53 years old. *See id.* She alleges that, in the course of her employment, the USDA discriminated against her on the basis of her race, sex, and age. *Id.* at 2 (Compl. ¶ 4). Her complaint includes claims of disparate treatment, a hostile work environment, and retaliation. *Id.* at 2–4 (Compl. ¶¶ 7–18).

The USDA has moved to dismiss on multiple grounds. *See* Dkt. 12. It contends that several of Plaintiff's claims should be dismissed on the basis of her failure timely to exhaust her administrative remedies; that Plaintiff did not suffer any "adverse personnel action" within the meaning of the antidiscrimination laws; that Plaintiff has failed to alleged facts that, even if taken as true, would rise to the level of severity or pervasiveness required to establish the existence of a hostile work environment; that Plaintiff's challenges to the manner in which USDA processed

her administrative complaint do not state a claim; and that 42 U.S.C. § 1981 does not provide a cause of action for claims against federal agencies for employment discrimination.

For the reasons explained below, the Court concludes that USDA has not carried its burden of demonstrating that Plaintiff failed timely to exhaust her claims.  The Court further concludes, however, that the complaint fails to allege facts sufficient to establish that Plaintiff suffered a cognizable adverse employment action or that she was subjected to a hostile work environment.  Finally, the Court concludes that the alleged deficiencies in the administrative Equal Employment Opportunity process are not actionable and that Section 1981 does not apply to claims of employment discrimination in the federal workforce.

The Court, accordingly, **GRANTS** USDA's motion (Dkt. 12) and dismisses the complaint without prejudice.

## I.  BACKGROUND

### A.  Factual Background

As an initial matter, the Court must decide which factual allegations are properly before the Court.  Plaintiff's five-count complaint is a mere six pages long, and it contains few non-conclusory factual allegations.  Dkt. 1 at 1–6.  It is accompanied, however, by over 40 pages of exhibits, including email and other correspondence, a newspaper article, and, more helpfully, Plaintiff's May 1, 2009 administrative complaint and the Equal Employment Opportunity Commission's ("EEOC") final decision regarding that complaint.  *Id.* at 8–55.

In adjudicating a motion to dismiss for failure to state a claim, a court may consider, along with the facts alleged in the complaint, "any documents either attached to or incorporated in the complaint and matters" subject to "judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Moreover, *pro se* pleadings should be "liberally

construed" and "*pro se* litigants are held to a lesser pleading standard than other parties." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).  At the same time, however, "[e]ven *pro se* litigants . . . must comply with the Federal Rules of Civil Procedure," *Butler v. Cal. State Disbursement Unit*, 990 F. Supp. 2d 8, 8–9 (D.D.C. 2013), and courts are not responsible for hunting through the record in search of material potentially helpful to a party's case, *United States ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 20 (D.D.C. 2008). Indeed, where undifferentiated documents are submitted along with a complaint that is itself lacking in detail, asking the Court to comb through the attachments to discern the substance of the plaintiff's claims risks placing it more in the role of advocate than judge and risks denying the defendant fair notice and an opportunity to respond to identifiable allegations of wrongdoing.

When Plaintiff's complaint in this action is read in combination with her administrative complaints,[1] the Court is able to discern the following factual allegations on which she premises her claims.  Importantly, USDA has identified these same factual allegations in its motion to dismiss, *see* Dkt. 12-1 at 1–2, and does not dispute that these allegations should be taken as true for purposes of the pending motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Relying on these materials, moreover, does not require the Court to pick through emails and other documents in search of a claim.  The relevant allegations are as follows.

---

[1] In addition to Plaintiff's May 1, 2009 administrative complaint, the Court will consider her March 10, 2009 administrative complaint, which is attached to USDA's motion to dismiss, *see* Dkt. 12-2, because it is referenced in Exhibit A to Plaintiff's complaint and because, like the May 1, 2009 administrative complaint submitted by Plaintiff, it is subject to judicial notice as an official document that is part of the record of the administrative process.  *See Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013); *see also St. Francis Xavier Parochial Sch.*, 117 F.3d at 624 (court may consider "matters of which [it] may take judicial notice" on a Rule 12(b)(6) motion without converting the motion to a Rule 56 motion).

Plaintiff began employment at APHIS in October 2007, where she worked as an investigator for the Investigative and Enforcement Services ("IES") division.  Dkt. 12-2 at 1. She is an African-American female who was approximately 53 years old when she started work at APHIS.  Dkt. 1 at 1 (Compl. ¶ 2).  Problems began almost immediately upon her arrival.  At that time, she was given a large caseload, including the "backlog of more than 100 delinquent/neglected cases" that previously had been assigned to a younger, Caucasian employee.  Dkt. 1 at 3 (Compl. ¶ 8); Dkt. 12-2 at 3, 8.  To make matters worse, according to Plaintiff, she was not provided any training or guidance regarding how to process the cases.  Dkt. 1 at 3 (Compl. ¶ 8).  When she sought guidance, Plaintiff—unlike other employees—was told "not to ask work-related questions" of other employees and "not to send e-mail messages" with questions.  *Id.* at 4 (Compl. ¶ 13).  Instead, she was relegated to posing her questions by writing them on pieces of paper and bringing them to her supervisor's "desk for responses."  *Id.*

Plaintiff further alleges that USDA adopted a "no tolerance" policy with respect to her work and her ability to process her caseload within "stringent guidelines."  *Id.* at 2–3 (Compl. ¶¶ 7–8).  Others, including the younger, Caucasian employee from whom Plaintiff inherited the large backlog of unprocessed cases, were not held to this stringent standard.  *Id.* at 3 (Compl. ¶ 8).  Indeed, that employee received "multiple, favorable career opportunities," despite the fact that she "complained and failed to process her . . . workload in compliance with office policies." *Id.* (Compl. ¶ 9).  When Plaintiff "expressed any workplace concerns, USDA harassed" her, including by "taking the liberty to search for personal data about [P]laintiff's eligible date to retire" and using "that date as part of its resolution to intimidate [Plaintiff] to retire" before "her anticipate[d] date."  *Id.*

More generally, the complaint alleges that USDA applied a "double standard[]" to Plaintiff relative to "two . . . Caucasian female[]" employees and a "Caucasian male" employee. *Id* at 2 (Compl. ¶ 7). USDA, for example, "failed to timely resolve recurring complaints of inappropriate behavior and sexual harassment" involving the Caucasian male employee, while "quickly redressing any issue" regarding Plaintiff. *Id.* at 3 (Compl. ¶ 11). According to Plaintiff, this differential treatment, including the requirement that she meet productivity standards that were not applied to others, USDA's failure to provide training, and the special rules that applied to her alone for asking questions were motivated by her race, sex, and age. *Id.* at 2 (Compl. ¶ 4).

**B.  Administrative Proceedings**

On March 10, 2009, Plaintiff faxed an Equal Employment Opportunity ("EEO") complaint detailing her claims of workplace discrimination to a USDA EEO counselor. Dkt. 1 at 13; Dkt. 12-2. In that document, Plaintiff states that she "consulted with the USDA-EEO Counselor" on February 6, 2009, and that she subsequently filed an EEO complaint on February 10, 2009. Dkt 12-2 at 1. The February 10 EEO complaint does not appear in the record. On May 1, 2009, Plaintiff lodged another EEO complaint with USDA, which does appear in the record. *See* Dkt. 1 at 13–14.

On June 30, 2009, Lauren Hill, an Employment Complaints Manager in the Civil Rights Enforcement and Compliance Office of APHIS, sent Plaintiff a proposal for resolution of her EEO complaint, offering that the Plaintiff take her annual leave, paid in advance, until she became eligible for retirement on August 15, 2009. *Id.* at 11. Hill also apparently communicated with Plaintiff's "personal representative" in March and April 2010 regarding a proposed resolution. *Id.* at 24.

From March 2010 to August 2013, Plaintiff and her personal representative transmitted letters and emails to various USDA officials describing her dissatisfaction with the administrative process. *See* Dkt. 1 at 16, 23, 35, 39, 41, 43, 55. In the letters, Plaintiff asserted that there were multiple players in the process whose roles she did not understand, *id.* at 16; that the EEO adjudicators had identified and pursued claims that did not relate to her complaints and had excluded other allegations for which she had obtained counseling, *id.* at 16, 25, 36; that she felt bullied by an investigator, *id.* at 16; that the investigators did not speak with or obtain affidavits or declarations from any of her witnesses, *id.* at 17, 24–25, 43, 55; and that she was not offered Alternative Dispute Resolution, *id.* at 35. On May 20, 2010, Plaintiff's personal representative received the agency's Report of Investigation, *id.* at 24, although that report does not appear in the record. In an email to a USDA official dated November 4, 2010, Plaintiff explained that she had decided to retire from USDA because of "unresolved issues" regarding "the hostile work conditions and harassment" and the EEO administrative process. *Id.* at 17.

USDA issued a Final Agency Decision with "no finding of discrimination" on February 7, 2011. *Id.* at 37. On appeal, the EEOC ruled in favor of USDA on December 27, 2012. *Id.* Neither of these decisions appear in the record. At least twice in 2012, and possibly as many as five times, Plaintiff petitioned the EEOC to remand her case back to USDA, alleging that the agency had failed properly to process her administrative complaints. *Id.* at 27, 32. The EEOC denied a request for reconsideration on July 16, 2013. *Id.* at 53. Finally, on September 16, 2013, the Director of USDA's Office of Adjudication responded to a letter from Plaintiff's personal representative about Plaintiff's concerns regarding the administrative process, stating that "[a]s all administrative appeals have been exhausted in [Plaintiff's] complaint, we can offer no further remedy." *Id.* at 37.

**C.  The Present Lawsuit**

Plaintiff filed this case on September 30, 2013, Dkt. 1, within the 90-day period authorized following the EEOC's final decision denying reconsideration, *id*. at 52–54.  The complaint contains five counts:

Counts I, II, and III are based on the allegations outlined above about differential treatment, including the requirement that Plaintiff meet productivity standards that were not applied to others, USDA's failure to provide training, and the special rules that applied to her alone for posing questions.  *Id.* at 2–4 (Compl. ¶¶ 7–13).

In Count III, the Plaintiff also alleges that USDA identified claims for investigation that "excluded [Plaintiff's] alleged harassment claims for which [P]laintiff was counseled" and "failed to use its own policies to execute imminent remedial action to secure plaintiff's rights . . . to work in a healthy harassment-free environment."  *Id.* at 3–4 (Compl. ¶¶ 10, 12).

In Count IV, Plaintiff repeats the allegation that USDA failed to investigate certain claims for which she was counseled, describing the excluded claims only as "hostile work conditions claims."  *Id.* at 4 (Compl. ¶ 14).

In Count V, labeled "retaliation claims," Plaintiff alleges that USDA (1) violated Plaintiff's "due process rights by failing to process her grievance" in accordance with 29 C.F.R. § 1614; (2) "failed to cure the discrepancies, errors, and record issues prior to forwarding" the matter to the EEOC; and (3) "failed to investigate [Plaintiff's] claims" within the 180-day time period provided for in 29 C.F.R. § 1614.108.  *Id.* at 4 (Compl. ¶¶ 15, 17, 18).  Plaintiff also alleges that she "began seeking justice at the earliest possible juncture of the administrative forum."  *Id.* (Compl. ¶ 16).

USDA contends that Plaintiff's complaint should be dismissed on the grounds that (1) Plaintiff failed timely to exhaust administrative remedies; (2) Plaintiff has failed to allege an adverse employment action with respect to Counts I and II; (3) Plaintiff has failed to allege sufficiently severe or pervasive conditions to constitute a hostile work environment in Count III; (4) Plaintiff's allegations in Count IV and V pertaining to the administrative process do not support an actionable claim; and (5) Plaintiff cannot state a claim under 42 U.S.C. § 1981 because Title VII provides an exclusive remedy against a federal agency for race-based employment discrimination.  *See* Dkt. 12.

## II.  DISCUSSION

### A.  Exhaustion

USDA first asserts that Plaintiff's complaint must be dismissed on the basis of her failure to exhaust her administrative remedies.  The EEOC has promulgated detailed regulations establishing administrative procedures for the resolution of employment discrimination claims against federal agencies.  A Title VII complainant must timely exhaust these administrative proceedings before filing suit in federal court, although the limits are not jurisdictional and "are subject to equitable tolling, estoppel, and waiver."  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  The D.C. Circuit has summarized the procedures applicable to Title VII claims as follows:

> Under Title VII, employees who believe they have been discriminated against must first consult an Equal Employment Opportunity (EEO) Counselor within 45 days of the alleged discriminatory acts.  29 C.F.R. § 1614.105(a)(1).  Should the employee and the Counselor fail to resolve the discrimination claim within 30 days, the Counselor sends the employee a notice explaining the administrative complaint procedure.  *Id.* § 1614.105(d).  The employee then has 15 days to file an individual and/or class complaint with the employing agency.  *Id.* § 1614.106 (regulations governing individual complaints); *id.* § 1614.204 (regulations governing class complaints); *see also id.* § 1614.103 (noting types of complaints governed by agency processing procedures outlined in regulations).  Upon receipt

> of a final agency decision—known as a "FAD"—disposing of the administrative complaints, the employee has either 30 days to appeal to the Equal Employment Opportunity Commission (EEOC), *id.* §§ 1614.401(a), 1614.402(a), or 90 days to file suit in federal court, 42 U.S.C. § 2000e–16(c).

*In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006).  "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary."  *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).  USDA contends that Plaintiff's claims must be dismissed for lack of administrative exhaustion because (1) she "failed to timely initiate an EEO claim within the required 45-day period for her discrimination claims arising in 2007 and 2008," Dkt. 12-1 at 4; and (2) she failed to initiate any EEO counseling for discrimination claims arising in June 2009, *id.* at 5.

An initial clarification is in order.  In its brief, USDA asserts that Plaintiff failed to "initiate an EEO *claim* within the 45-day period," *id.* at 4 (emphasis added), that she "initiated EEO counseling on February 9, 2009," and that "[f]or her claims to be timely, Plaintiff must have reached out to the EEO by December 23, 2008 (45 days from February 9, 2009, counting backward)," *id.* at 6.  The 45-day deadline, however, pertains to the initiation of EEO *counseling* after the allegedly discriminatory action, and not to the filing of a claim.  *See* 29 C.F.R. § 1614.105(a)(1) (requiring aggrieved person to "initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action").  Thus, December 23, 2008—the date calculated by USDA—reflects the earliest date on which a discrete act of discrimination for which EEO counseling was initiated on February 6, 2009, could have occurred in order for Plaintiff's claim

to be timely—*not* the date on which Plaintiff was required to file an EEO claim (or to "reach[] out to the EEO," Dkt. 12-1 at 6).[2]

USDA's non-exhaustion defense faces two significant difficulties, both based on the fact that failure to exhaust is a non-jurisdictional, affirmative defense and thus "the defendant bears the burden of pleading and proving it." *Bowden*, 106 F.3d at 437; *see also Brown*, 777 F.2d at 13; *Dick v. Holder*, 80 F. Supp. 3d 103, 111 (D.D.C. 2015); *Koch v. Schapiro*, 699 F. Supp. 2d 3, 12 (D.D.C. 2010). It is only after the defendant meets this burden that the burden shifts to the plaintiff to plead and prove "facts supporting equitable avoidance of the defense." *Bowden*, 106 F.3d at 437; *see also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) ("[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are *clear from the face of the complaint.*" (emphasis added)).

1. *ADEA Exhaustion*

USDA's first problem is that it frames its non-exhaustion defense solely in response to Plaintiff's Title VII claims, and it relies solely on the rules applicable to Title VII cases. Dkt. 12-1 at 4–8; Dkt. 15 at 2–3. In addition to alleging violations of Title VII, however, Plaintiff's complaint also alleges a violation of her rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Dkt. 1 at 2. The procedures applicable under the two statutes, moreover, are not identical. In particular, the ADEA gives federal employees two options for seeking judicial review. First, unlike in Title VII cases, "the employee may bring a claim directly to federal court so long as, within 180 days of the allegedly discriminatory act,

---

[2]  Although USDA's brief states that Plaintiff "initiated EEO counseling on February 9, 2009," Dkt. 12-1 at 6, it apparently calculated the 45-day period from February 6, 2009—the date on which the document submitted by Defendant indicates that Plaintiff engaged in EEO counseling. *Id.* at 1. The "February 9, 2009" date in USDA's brief appears to be a typographical error.

[she] provides the EEOC with notice of [her] intent to sue at least 30 days before commencing suit." *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003). Alternatively, "the employee may invoke the EEOC's administrative process, and then sue if dissatisfied with the results." *Id.* Here, all of USDA's arguments are directed at the second of these options—which is also the means of exhausting a Title VII claim. *See* Dkt. 12-1 at 4–8; Dkt. 15 at 2–3; *see also Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976) (describing Title VII exhaustion requirements). Defendant's motion makes no mention of whether Plaintiff has complied with the first option for obtaining judicial review of an ADEA claim.

To be sure, Plaintiff has not alleged that she provided the prescribed intent-to-sue notice to the EEOC within 180 days of the alleged discriminatory acts, as required under the first option, or that she waited at least 30 days after doing so to commence suit. Indeed, the record before the Court does not contain any suggestion that she complied with these requirements. The allocation of the burden of proof is, however, dispositive here. The D.C. Circuit and other judges on this Court have repeatedly treated failure to comply with the timeliness and exhaustion requirements of the ADEA as a non-jurisdictional, affirmative defense on which the defendant bears the burden of proof. *See Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010) ("[N]either Title VII nor the ADEA incorporates a jurisdictional exhaustion requirement."); *Kennedy v. Whitehurst*, 690 F.2d 951, 961 (D.C. Cir. 1982) ("[T]he timeliness and exhaustion requirements [of ADEA] are not jurisdictional in nature but rather are statutory conditions precedent to the instigation of litigation and are therefore subject to waiver, estoppel, and equitable tolling."); *see also Latson v. Holder*, 82 F. Supp. 3d 377, 386 (D.D.C. 2015); *Dick*, 80 F. Supp. 3d at 110–11; *Koch*, 699 F. Supp. 2d at 12. *Cf. Rann*, 346 F.3d at 195 (noting some uncertainty regarding application of the jurisdictional label in some contexts). As

the district court explained in *Singleton v. Potter*, 402 F. Supp. 2d 12 (D.D.C. 2005), "the administrative deadlines imposed by [the ADEA] are not jurisdictional in nature," but rather "'function like a statute of limitations, and, like a statute of limitations, are subject to waiver, estoppel, and equitable tolling.'" *Id.* at 33 (quoting *Brown*, 777 F.2d at 14).

Nor is there any reason to conclude that the two paths for seeking judicial review under the ADEA should be treated differently in this regard.  That is, if the option of invoking the EEOC administrative process is a non-jurisdictional, affirmative defense, as the Court of Appeals and other judges in this district have held, there is no reason to conclude that the option of notifying the EEOC within 180 days of the alleged discriminatory act, and then waiting 30 days before bringing suit, should be treated differently.  Indeed, the option of filing a notice with the EEOC within 180 days seems, if anything, more analogous to a statute of limitations than the option of complying with the EEOC administrative process.  The Court, accordingly, concludes that the burden of pleading and demonstrating that Plaintiff failed to comply with *either* path to judicial review rested with USDA.  Because USDA failed entirely to address the separate ADEA framework, its motion to dismiss Plaintiff's suit for failure to exhaust must be denied as to Plaintiff's ADEA claims.[3]

---

[3]  The D.C. Circuit has left open whether, having invoked the second path to judicial review by filing an EEO complaint, the plaintiff "must reasonably *pursue* the [administrative] process, as an exhaustion requirement would ordinarily entail," *Rann*, 346 F.3d at 195–96 (emphasis in original).  Similarly, in *Stevens v. Department of Treasury*, 500 U.S. 1, 5–9 (1991), the Supreme Court held that the petitioner had properly provided the EEOC with notice of its intent to sue— that is, it had complied with the first path to judicial review.  The Court then declined to reach the issue of whether, having filed an EEO complaint, the petitioner was also required to exhaust his administrative remedies.  *Id.* at 9–10.  The Supreme Court explained that the matter was not properly before it in light of the Solicitor General's position that "a federal employee who elects agency review of an age discrimination claim need not exhaust his administrative remedies before bringing a civil action." *Id.* at 9.  Other judges of this Court, however, have dismissed ADEA claims for failure to exhaust administrative remedies where the plaintiff filed an EEO complaint but failed to comply with the 45-day counseling requirement.  *See, e.g.*, *Koch v.*

2. *Title VII Exhaustion*

Although a closer question, the Court is also unpersuaded that USDA has carried its burden of demonstrating that Plaintiff's Title VII claims should be dismissed on exhaustion grounds. Again, the Court's conclusion turns on the premise that USDA bears the burden of demonstrating that Plaintiff failed to exhaust her administrative remedies in a timely manner. *Bowden*, 106 F.3d at 437; *see also Brown*, 777 F.2d at 13. Where a plaintiff alleges "discrete acts" of discrimination, she "can only file a charge to cover [those] discrete acts that 'occurred' within the appropriate time period," *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 114 (2002)—here, 45 days before the initiation of EEO counseling. By contrast, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122.[4]

Based on Plaintiff's statement in her March 10, 2009 EEO Complaint that she "consulted with the USDA-EEO Counselor" on February 6, 2009, Dkt. 12-2 at 1, USDA asserts that Plaintiff failed to initiate EEO counseling prior to that date, *id.* at 6. Then, USDA contends that

_____

*Walter*, 935 F. Supp. 2d 143, 153 (D.D.C. 2013); *Rodriguez v. Donovan*, 922 F. Supp. 2d 11, 16–17 (D.D.C. 2013). Here, even assuming without deciding that an ADEA plaintiff who invokes the second path to judicial review by filing an EEO complaint must then exhaust his administrative remedies, USDA has failed to meet its burden of proving that Plaintiff has not done so—as explained in the next section.

[4] Although *Morgan* pertained to the deadline for filing a Title VII claim against a private employer, rather than to the separate administrative deadlines applicable to claims alleged against the federal government as employer, *see* 536 U.S. at 104–105, courts have applied *Morgan* in the latter context as well. *See, e.g.*, *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 92 (D.D.C. 2005), *aff'd sub nom. Nurriddin v. Griffin*, 222 F. App'x 5 (D.C. Cir. 2007) (per curiam); *Velikonja v. Mueller*, 315 F. Supp. 2d 66, 74 n.3 (D.D.C. 2004), *aff'd in part, rev'd in part sub nom. Velikonja v. Gonzales*, 466 F.3d 122 (D.C. Cir. 2006) (per curiam); *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 34 (D.D.C. 2003).

several of the alleged discriminatory acts are time-barred because they occurred more than 45 days before February 6, 2009, *see id.* at 6–7.  Although USDA may be able to support this defense on a more complete record, its argument fails at this preliminary stage for two reasons.

First, because the complaint itself does not contain the dates on which the alleged discriminatory acts occurred, USDA attempts to glean the relevant dates from the various attachments to Plaintiff's complaint and the EEO complaint attached to USDA's motion.  It would be premature, however, to dismiss the complaint on non-exhaustion grounds based solely on USDA's (or the Court's) cobbling together of the apparent timing of the relevant events from these incomplete documents.  In *Bowden v. United States*, the D.C. Circuit affirmed the dismissal of a complaint on non-exhaustion grounds because "the pleadings and undisputed documents in the record" established that the plaintiff had failed to notify his federal employer within 30 days of learning that it had breached a Title VII settlement agreement, and the plaintiff conceded that he did not write to the federal agency until a year after he learned of the matter.  106 F.3d at 437. Here, in contrast, the record is less clear about when the alleged discriminatory acts occurred, and, more importantly, for how long they continued.  USDA, for example, suggests that Plaintiff waited from October 2007 until February 2009 to initiate EEO counseling with respect to her claim that she was denied proper training and was unfairly harassed for failing timely to process files that another employee had also failed timely to process.  Dkt. 12-1 at 6.  USDA also notes that Plaintiff "raised the lack of training" in August 2008 and complained in September 2008 that it was "unfair" to require her to submit her questions in writing—both many months prior to the counseling she sought in February 2009.  *Id.* at 7.  None of this, however, addresses the questions whether the allegedly discriminatory conduct was part of a continuing violation, and, if so, for how long it continued.

Second, Plaintiff's statement in her EEO complaint that she consulted an EEO counselor on February 6, 2009, does not conclusively establish that that was the *only* or the *earliest* date on which she did so.  Absent clear support for USDA's contention that February 6, 2009, was Plaintiff's *first* consultation with an EEO counselor, the Court cannot conclude that USDA has met its burden of proving non-exhaustion in the face of an incomplete administrative record at the motion to dismiss stage.  Indeed, while USDA relies on a statement in one document noting that Plaintiff sought counseling on February 6, 2009, it ignores another document that suggests that February 6, 2009 was not Plaintiff's first contact with an EEO official.  That document, a March 10, 2010 letter by Plaintiff's personal representative to the head of the USDA Employment Complaints Division, states that "several months prior" to meeting with an EEO "Counselor and later . . . filing her complaint on February 10, 2009, [Plaintiff] had at least two separate one-on-one conversations with Ms. Myrna P. Young, Assistant Director of Alternative Dispute Resolution, at USDA-APHIS" in Riverdale.  Dkt. 1 at 41.[5]  In *Steele v. Schafer*, the D.C. Circuit reversed a grant of summary judgment on non-exhaustion grounds because, while the complaint stated a date on which the plaintiff met with an EEO counselor, it did "not say that this was the only period in which she contacted a counselor, and . . . other documents in the record create a 'discrepancy' regarding the first contact date."  535 F.3d 689, 693 (D.C. Cir. 2008).  The same conclusion holds here as well.

USDA also argues that Plaintiff failed to exhaust her "claims of unlawful employment conduct that allegedly occurred in June 2009" because she "failed to initiate any EEO counseling" relating to that post-February 2009 conduct.  Dkt. 12-1 at 7–8.  It is far from clear,

---

[5]  A subsequent letter by Plaintiff's personal representative to the Office of Adjudication refers to Myrna Young as the "EEO Director."  *Id.* at 44.

however, that the complaint alleges claims based on post-February 2009 conduct.  Moreover, to

the extent that it alleges that the pre-February 2009 conduct continued after February 2009, there

is no reason that USDA's alleged failure to redress any allegedly ongoing discriminatory conduct

should insulate that conduct from review.  And, as discussed further below, the Court concludes

that the complaint does not adequately allege a claim with respect to the one discrete allegation

of discrimination that apparently occurred after February 2009—the search of Plaintiff's

employment records to determine her retirement date.  Dkt. 1 at 3 (Compl. ¶ 9).

Finally, USDA contends that Plaintiff has conceded the exhaustion issue because her

opposition to its motion to dismiss does not address Defendant's arguments.  *See* Dkt. 15 at 2–3.

Plaintiff's brief is not by any means a model of clarity, and it largely recounts the allegations in

her March 10, 2009 and May 1, 2009 EEO Complaints.  *Pro se* pleadings, however, must "be

liberally construed," *Fed. Exp. Corp.*, 552 U.S. at 402, and Plaintiff's brief does allude to two

potentially responsive arguments: that (1) she experienced "recurring harassment and ridiculing

that continued from 2007 to 2009"; and that (2) she "met with her supervisors and then with

[Civil Rights Enforcement and Compliance] office personnel who all should have been logically

connected with the EEO program," although the timing of these meetings is far from clear.  Dkt.

14 at 15.  If Plaintiff were responding to a motion for summary judgment that was supported by

evidence and a statement of undisputed material facts, her response might not suffice.  *Cf.*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the party opposing

summary judgment "must do more than simply show that there is some metaphysical doubt as to

the material facts"); *Latson*, 82 F. Supp. 3d at 386–87.  Here, however, the question is not

whether Plaintiff has come forward with evidence to rebut a prima facie showing that the

material facts are not in dispute.  Rather, the question is merely whether she has conceded non-

exhaustion at the pleading stage, and the Court concludes that she has not.  Although short on

detail, Plaintiff has responded, and her arguments are facially plausible.[6]

## B.  Adequacy of Plaintiff's Allegations

Next, Defendant asserts that Plaintiff has failed to state a claim upon which relief can be

granted because (1) Counts I and II do not allege an adverse employment action as required for a

disparate treatment claim; (2) Count III does not include allegations that are sufficiently severe

or pervasive to constitute a hostile work environment; (3) Count III is also deficient because

Title VII preempts her claim under 42 U.S.C. § 1981; and (4) Counts IV and V pertain to the

agency's processing of her administrative complaint, which is not independently actionable.

In considering USDA's motion to dismiss, the Court is guided by the overarching rule

that a complaint must "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation

marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial

---

[6]  A number of judges in this jurisdiction have held that the EEO counseling requirement may be satisfied by raising one's claims with supervisors or management.  *See Bergbauer v. Mabus*, 810 F. Supp. 2d 251, 259 (D.D.C. 2011) ("[T]he purpose served by EEO contact is also served where a complainant brings such acts to the attention of a supervisor."); *Lloyd v. Chao*, 240 F. Supp. 2d 1, 4 (D.D.C. 2002) (holding that plaintiff "satisfied the purpose underlying the EEO counseling requirement" by notifying supervisors of harassment and hostile work environment claims because "an employee's contact with management officials is tantamount to initiating contact with an EEO counselor").  *But see Carter v. Greenspan*, 304 F. Supp. 2d 13, 23–24 & n.10 (D.D.C. 2004) (holding that plaintiff's pursuit of "an internal dispute resolution procedure with his supervisors and a human resources representative cannot replace the required initial contact with an EEO counselor within 45 days").  Similarly, the D.C. Circuit has noted that the EEOC "has consistently held that a complainant satisfies the criterion of EEO counselor contact by contacting an agency official logically connected with the EEO process, even if that official is not an EEO counselor, and by exhibiting an intent to begin the EEO process."  *Miller v. Hersman*, 594 F.3d 8, 11 n.1 (D.C. Cir. 2010) (quoting *Osuagwu v. Peake*, No. 0120081307, 2008 WL 2264405, at *1 (E.E.O.C. May 20, 2008)).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 556, 570) (internal citation omitted).  The Court need not accept

as true any legal conclusions that are disguised as factual allegations, or inferences unsupported

by facts in the complaint, *see Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006), but will give

the plaintiff "the benefit of all inferences that can be derived from the facts alleged," *see Am.*

*Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted).

Although Defendant construes the complaint as alleging discrete counts of disparate

treatment (Counts I and II) and hostile work environment (Count III), Dkt. 12-1 at 8, 10, 15 &

n.6, the Court declines to construe Plaintiff's *pro se* complaint in this neatly divided manner.

Count III, for example, includes some allegations that sound in harassment/hostile work

environment, *see* Dkt. 1 at 3 (Compl. ¶ 11), but others that sound in disparate treatment, *id.* at 4

(Compl. ¶ 13).  "Although absence of segregation in the complaint doubtless complicates the

court's task, the complication can presumably be cured by insistence on suitably targeted

briefing, and is not an independent ground for" treating the allegations as raising only discrete

claims.  *Baird v. Gotbaum*, 662 F.3d 1246, 1253 (D.C. Cir. 2011).  *See also Kelly v. LaHood*,

840 F. Supp. 2d 293, 304 (D.D.C. 2012) ("A complaint need not necessarily use the words

'hostile work environment' in order to make out a hostile-work-environment claim.  Indeed,

'discrimination' or 'retaliation' can 'in principle include[] a hostile work environment theory.'"

(alteration in original) (quoting *Steele*, 535 F.3d at 694).  What is important is that the

"'complaint and the evidence of the plaintiff . . . be sufficient to put defendants on notice of any

theory of recovery upon which the plaintiff is relying.'"  *Id.* (quoting *Overby v. Nat'l Ass'n of*

*Letter Carriers*, 595 F.3d 1290, 1297 (D.C. Cir. 2010)).  The Court accordingly organizes its

analysis of whether Plaintiff has failed to state a claim around the relevant theories of relief. Because the substantive requirements for Title VII and ADEA discrimination and retaliation claims are the same in relevant respects (other than the protected group covered), the Court treats the two causes of action together in the remainder of this opinion. *See Brown v. Brody*, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999), *abrogated on other grounds by Steele*, 535 F.3d 696.

      1. *Disparate Treatment Claims*

      To establish a prima facie case of disparate treatment under Title VII and the ADEA, Plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) she was treated differently from similarly-situated employees outside the protected class." *Maramark v. Spellings*, No. 01-2206, 2006 WL 276979, at *14 (D.D.C. Feb. 3, 2006) *aff'd*, No. 06-5099, 2007 WL 2935411 (D.C. Cir. Sept. 20, 2007). USDA concedes for purposes of the instant motion that Plaintiff meets the first and third elements. Dkt. 12-1 at 9. It contends, however, that Plaintiff's disparate treatment claims must be dismissed for failure to state a claim because she "has not alleged that she suffered an adverse [employment] action." *Id.* at 8. The Court agrees.

      An adverse employment action is a "diminution in pay or benefits" or "some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brody*, 199 F.3d at 457. Thus, while "hiring, firing, failing to promote, [and] reassignment with significantly different responsibilities categorically are adverse employment actions," *Douglas v. Donovan*, 559 F.3d 549, 556 (D.C. Cir. 2009) (alteration in original) (internal quotation marks omitted), "[p]urely subjective injuries, such as dissatisfaction with a reassignment . . . or public humiliation or loss or

reputation, . . . are not adverse actions," *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002).  The question is not whether an employer has taken an action that makes "an employee unhappy," *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001), but whether the action resulted in a "significant" and "objectively tangible" harm, *Douglas*, 559 F.3d at 552 (internal quotation marks omitted).

Plaintiff's first claim of discriminatory treatment alleges that USDA maintained "illegal double standards" when it ignored complaints about Caucasian employees and "provided them multiple career opportunities to redeem themselves" while subjecting Plaintiff to a "'no tolerance' [requirement] . . . that she compl[y] with office and agency policies."  Dkt. 1 at 2 (Compl. ¶ 7).  This allegation fails to state a claim because it does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   *Twombly*, 550 U.S. at 555. Most significantly, Plaintiff does not allege that she herself sought and was denied career opportunities that were provided to others; she alleges only that other employees received "multiple career opportunities" notwithstanding unspecified complaints about them.  Dkt. 1 at 2 (Compl. ¶ 7).  Plaintiff's allegation that USDA "provided multiple favorable career opportunities" to a Caucasian employee "when she complained" but "harassed" Plaintiff when she "expressed any workplace concerns" fails for the same reasons. Dkt. 1 at 3 (Compl. ¶ 9).[7] Even if more factual support for these allegations might be gleaned from the documents appended to the complaint, the Court is unable to identify any allegation that Plaintiff was denied any specific "career opportunity" because of her race, sex, or age.

---

[7]  This allegation also fails to state a claim if construed as a retaliation claim.  Plaintiff does not provide more than a conclusory statement that she "expressed . . . workplace concerns," Dkt. 1 at 3 (Compl. ¶ 9), which is insufficient to state a plausible claim that "she engaged in a statutorily protected activity," *Brody*, 199 F.3d at 452.

To the extent that Plaintiff merely points to the criticism that she allegedly faced due to her failure to "comply with office and agency policies" and due to the unspecified complaints that she made, that type of intangible injury is insufficient to satisfy the adverse employment action requirement for a disparate treatment claim.  *See Broderick v. Donaldson*, 437 F.3d 1226, 1234 n.2 (D.C. Cir. 2006) (holding that a "disciplinary memo . . . does not qualify as an adverse action" if it does "not affect . . . grade, salary, duties, or responsibilities"); *Weng v. Solis*, 960 F. Supp. 2d 239, 247–48 (D.D.C. 2013) (holding that neither a "Warning Memorandum" nor a "Letter of Reprimand" constituted adverse employment actions in the absence of effect on "grade, salary, benefits" or other "terms, conditions, or privileges of . . . employment or future employment opportunities").  "'[A] bruised ego' will not suffice to make an employment action adverse."  *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003).  As a result, a "'poor performance evaluation[]" does not rise to the level of an "adverse action[]," absent an "'affect[ ] [on] the [employee's] grade or salary'" or other terms or conditions of employment.  *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (second, third, and fourth alterations in original) (quoting *Brody*, 199 F.3d at 457–58).  Here, Plaintiff has not alleged any such consequence.

Plaintiff's allegation that she was not provided with training or guidance also fails to state a claim.  Although "a denial of training may rise to the level of an adverse employment action," *Freedman v. MCI Telecomms. Corp.*, 255 F. 3d 840, 845 (D.C. Cir. 2001), Plaintiff has not alleged that she was denied training opportunities that were provided to her peers.  Plaintiff does allege that other employees were allowed to ask questions freely and to exchange emails seeking informal guidance, while she was required to submit her questions in writing to her supervisor, but she does not allege that this differential treatment materially affected "the terms, conditions, or privileges of . . . employment or . . . future employment," *Brody*, 199 F.3d at 457, or that she

was even indirectly deprived of any employment benefit or opportunity as a result of this more cumbersome process for asking questions.  Even if the process imposed on Plaintiff for posing questions was both unfair and embarrassing, more is needed to state a claim under Title VII or the ADEA.  *See Forkkio*, 306 F.3d at 1130.

Plaintiff's allegation that she was given a larger workload than a younger, Caucasian colleague comes closer to stating a claim but also fails.  The "[c]ourts have consistently held that . . . increased workload," standing alone, does not rise to the level of "adverse employment action."  *Saba v. U.S. Dep't of Agriculture*, 26 F. Supp. 3d 16, 25 (D.D.C. 2014); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 29–30 (D.D.C. 2003) (collecting cases); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) ("[C]hanges in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes.").  Rather, to "constitute an actionable injury," an alleged disparate workload must be "accompanied by some other" allegation of an "adverse change in the terms, conditions, or privileges of employment."  *Mack v. Straus*, 134 F. Supp. 2d 103, 113 (D.D.C. 2001), *aff'd*, No. 01-5122, 2001 WL 1286263 (D.C. Cir. Sept. 28, 2001).  A plaintiff might allege, for example, that an increase in workload resulted in a "material decrease in her [hourly or effective] salary," or changed "her working conditions."  *Lester*, 290 F. Supp. 2d at 29.  Here, however, Plaintiff merely alleges that she was given a larger workload.  She does not allege that she, as a result, was required to work longer hours, that she was denied a bonus or promotion based on her failure to complete her assignments, or that she suffered any other concomitant "adverse change in the terms, conditions, or privileges of [her] employment."  *Mack*, 134 F. Supp. 2d at 113.  Accordingly, at least as currently pled, this claim also fails.

In her brief in opposition to USDA's motion to dismiss, Plaintiff suggests that "recurring hostility . . . and other incidents . . . pressured" her to retire early. Dkt. 14 at 20–21. To the extent that she now argues that she was constructively discharged, that claim is not included in the complaint. *See Lempert v. Rice*, 956 F. Supp. 2d 17, 30 (D.D.C. 2013) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks omitted)). Rather, the only non-conclusory allegation in the complaint that might support such a claim is the allegation that the agency searched Plaintiff's personnel records to obtain the date that she would be eligible to retire and "used that date as part of its resolution to intimidate [Plaintiff] to retire years prior to her anticipate[d] date." Dkt. 1 at 3 (Compl. ¶ 9). From the cross-referenced material, it appears that Plaintiff is referring to the agency's efforts to settle the dispute as part of the EEO process. *See e.g.,* Dkt. 1 at 11. In response, USDA argues that this communication is protected under Federal Rule of Evidence 408 as an offer of compromise. Dkt. 12-1 at 8 n.2. The Court, however, need not reach that issue, because the allegation in the complaint is too vague to state a claim for constructive discharge, even in light of the liberal pleading rules applicable to *pro se* litigants. *See Fed. Exp. Corp.*, 552 U.S. at 402. Indeed, the complaint never even alleges that Plaintiff actually left USDA. That fact can only be inferred from the attachments to the complaint, which suggest that Plaintiff did not retire until late 2010, long after she filed her February, March, and May 2009 EEO complaints. Dkt. 1 at 17, 51. Absent specific factual allegations contained in the complaint about whether, when, and why Plaintiff retired, the complaint cannot reasonably be construed to state a claim for constructive discharge. *Cf. Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) (discussing elements of constructive discharge claim).

2.  *Hostile Work Environment Claim*

USDA also argues that Plaintiff's allegations fail to state a hostile work environment

claim because they "do not rise to the level of severity or pervasiveness" required for such a

claim. Dkt. 12-1 at 11.  To state a hostile work environment claim, the Plaintiff need not allege a

"tangible employment action, such as discharge, demotion, or undesirable reassignment."

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998).  Rather, a hostile work

environment claim requires a showing of harassment that, "to be actionable, . . . must be

sufficiently severe or pervasive to alter the conditions of [the victim's] employment and [to]

create an abusive working environment."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67

(1986) (internal quotation marks omitted) (first alteration in original).  To meet this test, an

"objectionable environment must be both objectively and subjectively offensive, one that a

reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be

so."  *Faragher*, 524 U.S. at 787.  Courts, accordingly, "look[] to the totality of the circumstances,

including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether

it interferes with an employee's work performance."  *Baloch v. Kempthorne*, 550 F.3d 1191,

1201 (D.C. Cir. 2008).

A number of Plaintiff's allegations could potentially fall under the hostile work

environment rubric.  Plaintiff alleges that USDA (1) did not provide her "training or proper

guidance," Dkt. 1 at 3 (Compl. ¶ 8); (2) "harassed and criticized" her for not processing cases

within guidelines, *id.*; (3) "harassed" her when she "expressed any workplace concerns,"

including "taking the liberty to search for personal data about plaintiff's eligible date to retire"

and using it "as part of its resolution to intimidate [Plaintiff] to retire," *id.* (Compl. ¶ 9); (4)

"failed to timely resolve the recurring complaints of inappropriate behavior and sexual

harassment charges about the one GS-13 Caucasian male that created unsuitable work conditions," *id.* (Compl. ¶ 11); (5) "failed to use its own policies to execute . . . remedial action to secure plaintiff's rights . . . to work in a healthy harassment-free environment," *id.* at 3–4 (Compl. ¶ 12); and (6) "harras[ed] [Plaintiff] not to ask work-related questions," *id.* at 4 (Compl. ¶ 13). The Court concludes, however, that these allegations fail to state a hostile work environment claim with sufficient factual specificity.

Unspecified claims of "harassment," "inappropriate behavior," and "unsuitable" conditions are the sort of "mere conclusory statements" that the court need not accept as true when weighing the plausibility of the plaintiff's complaint. *Iqbal*, 556 U.S. at 678. Although a plaintiff need not at this stage provide an exhaustive account of the offensive conduct to which she was allegedly subjected, a complaint—even a *pro se* one—must contain "sufficient factual matter" for the Court to conclude that relief is plausible and to put the Defendant on notice of the claim. *Id.* To the extent that the forgoing allegations include any factual detail, those facts do not establish the type of severe or pervasive harassment necessary to state a claim for hostile work environment. *Faragher*, 524 U.S. at 787–78. "Title VII is not a general civility code for the American workplace, nor does it serve as a remedy for all instances of verbal or physical harassment for it does not 'purge the workplace of vulgarity.'" *Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. 2002) (internal quotation marks and citation omitted), *abrogated on other grounds by Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53 (2006). Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment," *Faragher*, 524 U.S. at 788, and "a few isolated incidents of offensive conduct do not amount to actionable harassment," *Stewart*, 275 F.3d at 1134.

Here, many of Plaintiff's allegations constitute either "legal conclusions" or "conclusory statements," which will not suffice to state a claim. *Iqbal,* 556 U.S. at 678. And, where Plaintiff does provide more detail, those allegations do not rise to the "extreme" level required to alter "the terms and conditions of employment." *Faragher*, 524 U.S. at 788. Most notably, the complaint alleges that "[t]he entire staff of supervisors and subordinates of all . . . ethnic groups . . . communicated with each other . . . via e-mail and [by] asking work-related questions," while Plaintiff was required to pose only handwritten questions to her supervisor. Dkt. 1 at 4 (Compl. ¶ 13). Even putting aside the problem that this allegation asserts that employees "of *all ethnic groups*" were treated *alike* and that it was simply Plaintiff who was singled out, *id.*, it fails to meet the "demanding standard" for alleging a hostile work environment claim, *Smith v. De Novo Legal, LLC*, 905 F. Supp. 2d 99, 102 (D.D.C. 2012). Although cumbersome and potentially embarrassing, the requirement that Plaintiff submit handwritten questions was not so extreme that it, in effect, altered the terms or conditions of Plaintiff's employment. She does not allege that the requirement "unreasonably interfere[d] with [her] work performance," *Stewart*, 275 F.3d at 1133–34, or that it created an objectively caustic or offensive environment, *cf. Burkes v. Holder*, 953 F. Supp. 2d 167, 176–77 (D.D.C. 2013) (holding that allegations of repeated exposure "to racist and offensive symbols over a period of time" were sufficient to state a claim).

Without more, Plaintiff's allegations fall short of the type of "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). Plaintiff's non-conclusory factual allegations thus fail to "nudge . . . across the line from conceivable to plausible," *Teliska v. Napolitano*, 826 F. Supp. 2d 94, 99 (D.D.C. 2011), her claim that she was

subjected to "an objectively hostile or abusive work environment" based on race, sex, or age, *Harris*, 510 U.S. at 21. *See also Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) ("[E]ven [a *pro se* complaint] must plead factual matter that permits the court to infer more than the mere possibility of misconduct." (internal quotation marks and citation omitted)).  Finally, although some of the exhibits in this case allude to what may indeed be troubling work conditions, it is not the Court's role to determine which statements contained in the attachments might supplement Plaintiff's conclusory allegations. *Cf. Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir. 1995) ("[J]ust as a district court is not required to scour the record looking for factual disputes, it is not required to scour the party's various submissions to piece together appropriate arguments.").  Accordingly, Plaintiff's hostile work environment claim cannot stand as currently pled.

> 3. *Administrative Process Claims*

Plaintiff makes several allegations relating to the administrative processing of her discrimination complaint in Count V under the heading "Retaliation Claims."  *See* Dkt. 1 at 4.  In that count, Plaintiff alleges that USDA (1) "violated [her] due process rights by failing to process her grievance in accordance with the Commission's regulations, rules, and procedures . . . under 29 C.F.R. 1614," *id.* (Compl. ¶ 15); (2) "failed to cure the discrepancies, errors, and record issues prior to forwarding [her] grievance . . . to EEOC[] for action," *id.* (Compl. ¶ 17); and (3) "failed to investigate [her] claims filed against them within the 180-day requirement," *id.* (Compl. ¶ 18).  In Counts III and IV, Plaintiff also alleges that "the claims USDA identified for investigation excluded [Plaintiff's]" harassment and hostile work environment claims "for which she was counseled."  *Id.* at 3–4 (Compl. ¶¶ 10, 14) (emphasis omitted).

These allegations fail to state a claim.  First, USDA's alleged failure to follow the EEOC regulations regarding the administrative processing of her claim is not actionable.  As the D.C. Circuit has explained, there is "no cause of action . . . for challenges to [administrative] processing of [an employment discrimination] claim."  *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam).  Rather, a plaintiff's ability to "bring a Title VII action directly against his or her employer [is] . . . the remedy for any improper [administrative] handling of a discrimination charge."  *Id.*  Should the agency fail to take timely action on a Title VII complaint, the remedy available to the plaintiff is to file suit against her employer in federal court after seeking to exhaust remedies and waiting the required period of time.  29 C.F.R. § 1614.407(b).

Second, Plaintiff's claims fare no better when framed as a Due Process challenge, since any procedural flaws in the administrative process did not deprive her of a property or liberty interest protected by the Constitution.  *See, e.g.*, *Council of the Blind of Del. Cty. Valley v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983) ("The agency's failure to follow the applicable rules is relevant to a due process claim *only if the agency's action deprives the plaintiff of life, liberty, or property*.  In the present case it does not." (emphasis in original)).  As noted above, the employee's judicial remedies remain available, regardless of whether the agency or EEOC has properly addressed the administrative complaint.  And to the extent that Plaintiff is alleging that the agency retaliated against her by improperly processing her administrative charge, she also fails to state a claim because improper administrative processing "has no discernable negative consequences for plaintiff's employment."  *Stewart*, 275 F.3d at 1136.

4.  *Section 1981 Claim*

Finally, although it is unclear whether Plaintiff even sought to raise a claim under 42

U.S.C. § 1981, USDA argues that Plaintiff has failed to state such a claim.  The complaint makes

a passing reference to "plaintiff's rights governed under Title 42 U.S.C.A. 1981 to work in a

healthy harassment-free environment," Dkt. 1 at 3 (Compl. ¶ 12), but expressly identifies her

claims as arising under Title VII and ADEA, *id.* at 1–2 (Compl. ¶¶ 3–4).  In any event, Plaintiff

cannot bring a claim that her federal government employer engaged in race-based discrimination

under § 1981.  "[Section] 717 of the Civil Rights Act of 1964, as added by § 11 of the Equal

Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16 (1970 ed., Supp. IV), [is] the

exclusive individual remedy available to a federal employee complaining of job-related racial

discrimination."  *Brown*, 425 U.S. at 824–25.

## III.    CONCLUSION

The Court concludes that, although USDA has failed to meet its burden of proving non-

exhaustion, Plaintiff's complaint must be dismissed for failure to state a claim.  This dismissal is

without prejudice.  If Plaintiff is able to modify her complaint in a manner that addresses the

deficiencies discussed above, she may file an amended complaint on or before February 1, 2016.

An accompanying order is filed concurrently with this opinion.


                                                    /s/ Randolph D. Moss
                                                    RANDOLPH D. MOSS
                                                    United States District Judge

Date: December 30, 2015

29