UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA A. NICHOLS,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>MIKE YOUNG,[1] Acting Secretary, United States Department of Agriculture,<br><br>　　　　*Defendant*. | Civil Action No. 13-1502 (RDM) |

**MEMORANDUM OPINION**

Proceeding *pro se*, Plaintiff Barbara Nichols brings this action against her former employer, the United States Department of Agriculture ("USDA"), for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 633a *et seq.* ("ADEA"). The Court previously dismissed Nichols's complaint for failure to state a claim, but simultaneously granted Nichols leave to file an amended complaint to address the deficiencies identified in the Court's decision. Nichols has now filed an amended complaint, Dkt. 23, and the USDA has moved for summary judgment or, in the alternative, for judgment on the pleadings, Dkt. 37. Because Nichols has failed to rectify the deficiencies in her original complaint, and because her amended complaint does not state a claim, the Court will grant the USDA's motion for judgment on the pleadings and will dismiss the complaint, this time with prejudice.

---

[1] The current officeholder is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

## I. BACKGROUND

The Court has previously set forth the factual and procedural history of the case, *see Nichols v. Vilsack*, 13-cv-1502, 2015 WL 9581799, at *1–4 (D.D.C. Dec. 30, 2015) ("*Nichols I*"), and, accordingly, need only address recent developments.

Although Nichols's original complaint contained few non-conclusory allegations, because Nichols is proceeding *pro se*, the Court reviewed her administrative complaints in an effort to discern her specific allegations. *Nichols I,* 2015 WL 9581799 at *1–2. From those materials, the Court discerned the following allegations: Nichols is an African-American woman, who was fifty-three years old when she began her employment at the USDA in 2007. *Id.* at *2. Problems began almost immediately after Nichols started work at the USDA. *Id.* Among other things, she was assigned a large caseload, which included a backlog of cases that a younger, Caucasian employee had failed to process; she was not provided any training or guidance; and, when she sought guidance, she was told not to ask work-related questions of other employees and not to send email messages with questions. *Id.* In addition, according to Nichols's initial complaint and administrative complaints, she was subjected to a "no tolerance" policy with respect to her work, while others—including the younger, Caucasian employee who had created the backlog that greeted Nichols when she started work—were held to less stringent standards and, indeed, received "multiple, favorable career opportunities." *Id.* (quoting Dkt. 1 at 3 (Compl. ¶ 9)). Nichols further alleged, moreover, that when she complained, the USDA harassed her and, more generally, that the USDA applied a "double standard" under which it "quickly redress[ed] any issue" involving her performance, *id.* (quoting Dkt. 1 at 2–3 (Compl. ¶¶ 7, 11)), but "failed to timely resolve recurring complaints of inappropriate behavior and

sexual harassment" involving a Caucasian, male employee, *id.* (quoting Dkt. 1 at 3 (Compl. ¶ 11)).

The USDA moved to dismiss Nichols's original complaint, arguing that she failed to timely exhaust her administrative remedies with respect to some, but not all, of her claims and that, in any event, her original complaint failed to state a claim. *Id.* at *1. With respect to the first of these arguments—Nichols's failure to timely exhaust her administrative remedies—the Court concluded that the defense was non-jurisdictional and that the USDA had not, and could not, carry its burden of proving non-exhaustion at the motion-to-dismiss stage of the proceeding. *Id.* at *4–8. The Court, accordingly, denied that portion of the USDA's motion without prejudice to the USDA's right to reassert the defense with an appropriate factual record. *Id.* at *7. The Court agreed with the USDA, however, that Nichols's complaint, even as clarified based on the attached administrative complaint, failed to state a claim. *Id.* at *9–14. Of particular relevance here, the Court held that Nichols's disparate treatment claims failed "to satisfy the adverse employment action requirement" necessary to state a claim under Title VII or the ADEA, *id.* at *10–11, and that her hostile work environment claims failed to raise "the type of severe or pervasive harassment necessary to state a claim," *id.* at *12.

The Court did, however, permit Nichols to "file an amended complaint that "addresse[d] the deficiencies" it had raised, *id.* at *14, and on January 27, 2016, Nichols filed an amended complaint that reasserted her race, sex, and age discrimination claims under Title VII and the ADEA, Dkt. 23. Nichols expanded her complaint from six to thirteen pages, and, although her amended complaint eliminated most of the exhibits that she had appended to her first complaint,[2]

---

[2] Nichols's amended complaint attaches only correspondence from 2009 and an EEOC appeals document. *See* Dkt. 23 at 15–18. Her initial complaint, in contrast, was "accompanied . . . by over [forty] pages of exhibits," including emails, a newspaper article, and several EEO

it includes numerous citations to her first complaint, Dkt. 1, her opposition to the USDA's prior motion to dismiss, Dkt. 14, and the exhibits attached to both pleadings. On April 8, 2016, the USDA moved to dismiss or transfer the amended complaint for improper venue, Dkt. 28, and the Court denied that motion on May 2, 2016, Dkt. 34. Shortly thereafter, the USDA answered the amended complaint. Dkt. 35.

On June 7, 2016, the USDA filed the pending motion for summary judgment or, in the alternative, for judgment on the pleadings. Dkt 37. With the benefit of a factual record, the USDA now renews its exhaustion defense, *id.* at 11–18, and, echoing its earlier motion to dismiss, it further argues that the amended complaint fails to remedy the pleading deficiencies that the Court identified in Nichols's original complaint, *id.* at 4, 18–24. The Court advised Nichols of the need to file "a memorandum and supporting evidence in response" to the USDA's motion. *See* Dkt. 39 at 1 (citing *Neal v. Kelly*, 963 F.2d 453, 456–57 (D.C. Cir. 1992) and *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988)). On June 30, 2016, Nichols filed her opposition, along with seventy pages of exhibits, Dkt. 40, and the USDA subsequently filed a reply, Dkt. 41.

## II. DISCUSSION

As in its original motion to dismiss, the USDA argues that Nichols's amended complaint must be dismissed for two, independent reasons: because Nichols failed to exhaust Title VII and ADEA administrative remedies in a timely manner and because she fails to allege the essential elements of each of her claims. The Court, accordingly, once again faces the threshold question whether it must—or should—decide the exhaustion issue before addressing the sufficiency of Nichols's allegations. As explained in the Court's prior decision, the Court is not required to

---

documents, including her May 1, 2009, administrative complaint and the EEOC's final decision regarding that complaint. *See Nichols I*, 2015 WL 9581799, at *1.

decide the exhaustion issue first; failure to exhaust administrative remedies under Title VII and the ADEA does not raise a jurisdictional hurdle, but rather constitutes an affirmative defense. *Nichols I,* 2015 WL 9581799 at *5 (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). Moreover, because the Court premised its prior decision on the sufficiency of Nichols's allegations, and because it provided her with an opportunity to attempt to cure the deficiencies it identified, it makes sense to begin (and, for the reasons given below, to conclude) the Court's analysis by addressing the sufficiency of the amended complaint.

In doing so, the Court will start with the claims that Nichols raised in her original complaint, which she has attempted to bolster in her amended complaint, and then turns to her arguably new claim of constructive discharge.[3]

**A.     Adequacy of Nichols's Allegations**

Because the Court previously address the sufficiency of Nichols's original complaint, there is no need to start from scratch or to repeat the Court's prior analysis. The relevant question is simply whether the amended complaint rectifies the problems the Court has previously identified or has added new claims that meet the governing pleading standards. Moreover, it makes no difference that the Court's earlier opinion relied on Rule 12(b)(6), while the USDA's present motion arises under Rule 12(c). The standard of review under both rules is identical, *see, e.g.*, *Vanderhorst v. Blue Cross Blue Shield Ass'n*, 99 F. Supp. 3d 46, 48–49 (D.D.C. 2015); the sole difference is that a Rule 12(b)(6) motion is the proper vehicle for challenging the legal sufficiency of a complaint before the defendant has answered, and a Rule

---

[3] Although Nichols divides her amended complaint into two counts—"disparaging treatment," Dkt. 23 at 3–8 (Am. Compl. ¶¶ 7–30), and "disparaging impact," *id.* at 8–11 (Am. Compl. ¶¶ 31–40)—the Court, as it did previously (and as the USDA does in its motion to dismiss), "organizes its analysis of whether [Nichols] has failed to state a claim around the relevant theories of relief" rather than the labels she uses to describe her allegations. *Nichols I,* 2015 WL 9581799, at *9.
5

12(c) motion is the proper vehicle to raise such a challenge after the defendant has answered. Under both rules, the Court must decide whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

1.  *Disparate Treatment*

In its first opinion, the Court held that Nichols's disparate treatment claims under Title VII and the ADEA failed as a matter of law because she had "not alleged that she suffered an adverse employment action." *Nichols I*, 2015 WL 9581799, at *10 (quotation marks and alteration omitted). The Court held, for example, that Nichols's allegations that she "was told not to ask work-related questions" of employees other than her supervisor and was not permitted to "send email messages," *id.* at *2 (quotation marks omitted), while potentially "unfair and embarrassing," did not "materially affect[] the terms, conditions, or privileges of . . . [her] employment or . . . future employment," *id.* at *11 (quotation marks omitted). Similarly, the Court held that Nichols's allegation that "she was given a larger workload than a younger, Caucasian colleague" failed to state a claim because she did not allege that the additional work caused a "concomitant adverse change in the terms, conditions or privileges of her employment." *Id.* (quotation marks and alteration omitted).

Nichols's amended complaint includes some (although not much) additional detail in support of these allegations. *Compare* Dkt. 1 at 3–4 (Compl. ¶¶ 8, 13) *with* Dkt. 23 at 3–4 (Am. Compl. ¶¶ 8–12). That detail, however, does not cure the problem that the Court previously identified. Both Nichols's original and amended complaints make essentially the same claims—that she was given a heavier workload than the "Caucasian female" who had created the backlog

6

that Nichols was asked to clear, Dkt. 1 at 3 (Compl. ¶ 8); Dkt. 23 at 3 (Am. Compl. ¶¶ 8–10); that she was subjected to more "stringent standards" than the Caucasian female whose work she had inherited, Dkt. 1 at 3 (Compl. ¶ 8); Dkt. 23 at 3 (Am. Compl. ¶ 9); and that she was not allowed to send email messages but was, instead, required "to write down her questions" and to walk to someone else's desk "for an oral response," Dkt. 1 at 4 (Compl. ¶ 13); Dkt. 23 at 4 (Am. Compl. ¶ 11).  As the Court previously explained, these allegations, even if true, would not show that Nichols suffered the type of adverse employment action—"such as hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities," *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quotation marks omitted)—that Title VII and the ADEA preclude.  She did not originally allege, and does not now allege, for example, that she was required to work additional hours or that her hourly salary was affected by her workload.  *See Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) ("[C]hanges in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes.").  And she did not previously allege, and does not now allege, that the restrictions on her use of email and the requirement that she pose questions in writing amounted to anything more than the type of embarrassment and inconvenience that the D.C. Circuit has held is not actionable on a disparate treatment theory.  *See, e.g.*, *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) ("Purely subjective injuries, such as dissatisfaction with a reassignment or public humiliation or loss of reputation are not adverse actions." (citations omitted)).

Nichols's amended complaint also alleges that the USDA held her and other African-American employees to a "no-tolerance" standard not applicable to other employees and that "non-African-American" employees were provided "with relief and multiple career

opportunities" not available to African-American employees. Dkt. 23 at 5, 9 (Am. Compl. ¶¶ 18, 33). In considering the similar allegations contained in Nichols's original complaint, the Court concluded that it was "unable to identify any allegation that [Nichols] was denied any *specific* 'career opportunity' because of her race, sex, or age," or that she suffered any other adverse consequence. *Nichols I*, 2015 WL 9581799, at *10 (emphasis added). The same holds true for Nichols's amended complaint. The amended complaint does not identify any specific adverse action that was taken against Nichols based on this "no-tolerance" standard, and it does not identify any specific career opportunity that others were given and that she was denied because of her race, sex or age. She does not allege, for example, that other employees received specific promotions, raises or any other benefits that she was denied. It is not asking too much, for example, to require that a Title VII plaintiff identify the "multiple career opportunities" that were provided to "non-African- American" employees, but that she claims were denied to her based on her race. Dkt. 23 at 9 (Am. Compl. ¶ 33). As the Supreme Court has explained, a court need not accept as true any "'legal conclusion couched as a factual allegation,'" "'naked assertions' devoid of 'further factual enhancement,'" or a "'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted). Here, Nichols did not previously allege, and she does not now allege, any facts to support her otherwise "naked assertions" of disparate treatment.

The factual allegations that Nichols raises for the first time in her amended complaint fare no better. She alleges, for example, that she received "harsh and destructive criticism" from a "supervisor of the opposite gender" and was "regularly criticized" by other employees. Dkt. 23 at 5, 7 (Am. Compl. ¶ 17, 27). But "[c]riticism of an employee's performance unaccompanied by a change in position or status does not constitute adverse employment action." *Brodetski v.*

8

*Duffey*, 141 F. Supp. 2d 35, 47 (D.D.C. 2001); *see also Glenn v. Williams*, 98-cv-1278, 2006 WL 401816, at *24 (Feb. 21, 2006 D.D.C.) ("[A]n employer's criticism of an employee's work does not generate a tangible employment action."). And Nichols's claim that the USDA rewarded "its non-African-American employees who worked and conducted themselves outside agency policies" with "monetary awards and special recognition," Dkt. 23 at 10 (Am. Compl. ¶ 36), is, once again, too vague and conclusory to state a claim. In support of this allegation, Nichols cites to a portion of her administrative complaint in which she asserts that a USDA supervisor applied a "no tolerance policy" to Nichols, but did not "demonstrate the same hostile demeanor towards the Caucasian female Teresa Lorenzano," who, according to Nichols, "neglected [her] extensive caseload" yet received "special recognition awards and multiple career opportunities." Dkt. 1 at 14 (cited at Dkt. 23 at 10 (Am. Compl. ¶ 36)). But, Nichols never alleges that she was denied a "monetary award" based on her race (or sex or age). Rather, her point seems to be that she was required to meet a particularly demanding standard and that Lorenzano was not held to this same standard. For the reasons explained above and in the Court's prior opinion, however, that is not enough to state a claim.

To be sure, Nichols does allege in her amended complaint that, had the USDA provided her with "relief and career opportunities," she "would have been allowed to work longer and possibly [would] have received one or two more step increases between 2011–2015," which, in turn, would have led to "higher monthly retirement benefits." *Id.* at 9–10 (Am. Compl. ¶¶ 34–35). But the losses that Nichols allegedly sustained *after* retiring from federal service on December 31, 2010, *see* Dkt. 28-1 at 2 (Carlson Decl. ¶ 5), cannot supply the required "adverse employment action" necessary to state a disparate treatment or hostile work environment claim. Rather, those losses would, at most, support Nichols's distinct claim, discussed below, that she

was constructively discharged.  Absent such a claim, however, any losses that she allegedly suffered *after* retiring have no bearing on the adequacy of her amended complaint.[4]

Mindful that "*pro se* pleadings should be liberally construed," *Nichols I*, 2015 WL 9581799, at *1 (quotation marks omitted), and affording Nichols "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation marks omitted), the Court nonetheless concludes that Nichols has failed to plead one essential element of a disparate treatment claim under Title VII or the ADEA—that is, an adverse employment action that affected the terms, conditions, or privileges of her employment or future employment.  Nichols's amended complaint does not "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), and, accordingly, the Court will dismiss her disparate treatment claims.[5]

2.  *Hostile Work Environment*

The Court's earlier decision also concluded that Nichols failed to state a hostile work environment claim.  *Nichols I*, 2015 WL 9581799, at *12–13.  Nichols's original allegations fell into two categories.  The first group of allegations—including the allegations that she was the victim of "[u]nspecified claims of 'harassment,' 'inappropriate behavior,' and 'unsuitable'

---

[4]  To the extent Nichols attempts to bolster her disparate treatment claims by detailing allegedly discriminatory actions taken by the USDA against *other* African-American and/or female employees, *see* Dkt. 23 at 6–9 (Am. Compl. ¶¶ 21–22, 25–27, 30–33), her attempt fails.  Disparate treatment claims under Title VII do not permit an employee to recover based on alleged discrimination against other employees.  This "suit is not a class action," and thus "evidence of systematic or general instances of discrimination can only be collateral to evidence of specific discrimination against the actual plaintiff."  *Williams v. Boorstin*, 663 F.2d 109, 115 n.38 (D.C. Cir. 1980).

[5]  Because it determines that Nichols fails to allege an adverse action, the Court need not consider the USDA's argument that Nichols's amended complaint "fails to show the requisite causal link between any allegedly adverse action and [her] race, sex, or age."  Dkt. 37 at 18.

conditions"— lacked "sufficient factual specificity" and "constitute[d] . . . 'legal conclusions' or 'conclusory statements,' which [did] not suffice to state a claim." *Id.* at *12 (quoting *Iqbal*, 556 U.S. at 678). And, the second group of allegations—including Nichols's contentions that she was not allowed to send email messages, was required to write out her questions, and was criticized—did not describe the type of "severe or pervasive" harassment sufficient to "create an abusive working environment." *Id.* at *12 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Again, Nichols's amended complaint fails to remedy these flaws.

"The bar for demonstrating a hostile work environment [under Title VII and the ADEA] is a high one: '[A] plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Achagzai v. Broad. Bd. of Govs.*, 170 F. Supp. 3d 164, 183 (D.D.C. 2016) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201. Under this demanding standard, Title VII and the ADEA do not function as "general civility code[s]" that regulate the "ordinary tribulations of the workplace," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation marks omitted), and "[e]ven a few isolated incidents of offensive conduct do not amount to actionable harassment," *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). Rather, the complained-of "conduct must be extreme" and must be "both objectively and subjectively offensive," such "that a reasonable person would find [the conduct] hostile or abusive, and . . . that the victim in fact did perceive [the conduct] to be so." *Faragher*, 524 U.S. 787–88.

Nichols's amended complaint expands on the hostile work allegations asserted in her first complaint, *compare* Dkt. 1 at 3–4 (Compl. ¶¶ 8–9, 11–13) *with* Dkt. 23 at 4–9 (Am. Compl. ¶¶ 14, 17, 19–21, 27–29, 31, 32), but it still fails in two respects.  First, as with her original complaint, she includes numerous allegations of harassment or abuse that are too conclusory to state a claim.  She alleges, for example, that her supervisors and one co-worker exchanged emails "containing false information and accusing Nichols of doing and saying things that she did not say or do."  Dkt. 23 at 4 (Am. Compl. ¶ 13).  She alleges that she was the victim of "recurring incidents of harassment, hostility, and retaliation," that her work was "sabotaged," and that her supervisors did not respond to her concerns.  *Id*. (Am. Compl. ¶ 14).  And she alleges that she was subjected to "harassment and other undesirable activities," including "harsh and destructive criticism," "'atrocious behavior [that] inflicted indignity of [an] indescribable nature,'" and "aggressive" and "inappropriate" conduct by a supervisor.  *Id*. at 5–6 (Am. Compl. ¶¶ 17, 19–21).  None of those allegations, however, provide the type of factual content required to state a claim.  *See Iqbal*, 556 U.S. at 678 (explaining that "conclusory statements" and "legal conclusions" do "not suffice" to state a claim).

Second, Nichols's allegations that do provide factual content again fail to allege conditions that are so "severe or pervasive" that they "alter[ed] the conditions of [Nichols's] employment," *Nichols I*, 2015 WL 9581799, at *12 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)), and, indeed, largely repeat the factual allegations the Court held to be insufficient in its first decision.  Nichols's allegations that she was not permitted to send email messages, for example, "[a]lthough cumbersome and potentially embarrassing," is "not so extreme" that it "meet[s] the 'demanding standard' for alleging a hostile work environment claim."  *Id.* (quoting *Smith v. De Novo Legal, LLC*, 905 F. Supp. 2d. 99, 102 (D.D.C. 2012)).

Similarly, her allegation that she was "approached . . . practically every[ ]day" by her supervisors and asked "to stop processing the case she was working on" in order to "retrieve and beg[i]n processing other cases," Dkt. 23 at 3 (Am. Compl. ¶ 10), does not represent the sort of "hostile or abusive" conduct that a reasonable person would find "objectively . . . offensive," *Faragher*, 524 U.S. at 787.

Nichols's amended complaint does hint at the possibility that her workplace was infected with racial animus, but she offers little factual support for that allegation. She alleges that, "[w]hen [she] kept complaining to her supervisor about the . . . Caucasian female[']s . . . racist remarks and regular harassment, [Nichols] was told[,] 'Just ignore her. That's just the way she is. Her spouse is military.'" Dkt. 23 at 7 (Am. Compl. ¶ 28). Although the amended complaint is not entirely clear, it appears that these "racist remarks" involved the following exchange, which is recounted in the next paragraph of the amended complaint: The "same Caucasian female supervisor who regularly harassed [Nichols], yelled at Nichols saying[,] 'Don't you ever ask those two students [part-time stay-in-school non-African-American females] to photocopy. You ask those other employees [permanent, full-time and 'jump-start' African-American females and one male with years of government service] to photocopy." *Id.* at 8 (Am. Compl. ¶ 29) (alterations in original).

Even drawing all inferences in Nichols's favor—as the Court is required to do on a motion for judgment on the pleadings—these allegations are not sufficient to sustain a hostile work environment claim. As the Supreme Court has explained, the "mere utterance of an epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quotation marks and alteration omitted); *see also Slate v. Public Defender Serv. for D.C.*, 31 F. Supp. 3d 277, 296 (D.D.C.

2014) (explaining that "the D.C. Circuit has repeatedly emphasized that casual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs" do not necessarily give rise to a hostile work environment claim) (quotation marks omitted). Accordingly, without more, the Court cannot conclude that these allegations provide "sufficient factual material" to clear the high bar necessary to state a hostile work environment claim under Title VII. *Iqbal*, 556 U.S. at 678.

      3.  *Constructive Discharge*

Finally, Nichols's amended complaint includes allegations that can be construed as a claim for constructive discharge. Nichols claims that "different supervisors . . . regularly suggest[ed]" that she "consider retiring," Dkt. 23 at 5 (Am. Compl. ¶ 15); that the conditions described in the amended complaint left her with "no other recourse [but] to . . . retire . . . five years prior to her anticipated [retirement] date," *id.* at 9 (Am. Compl. ¶ 34); and that, had she received the "same or similar relief and career opportunities as those regularly provided to [the USDA's] non-African-American[] [employees], [she] would have been allowed to work longer and [would have] possibly received one or two more step increases between 2011–2015," which would have resulted in "higher monthly retirement annuity benefits," *id.* at 10 (Am. Compl. ¶ 35). As the Supreme Court has explained, however, to state a claim for constructive discharge, a plaintiff must make a showing "[b]eyond" that necessary to "establish [a] hostile work environment" claim, and, in particular, must "show[] . . . that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Penn. State Police v. Suders*, 542 U.S. 129, 133–34 (2004). Because a hostile work environment claim is, accordingly, a predicate for a constructive discharge claim, *id.*, and because, as explained above, Nichols has failed to allege a hostile work environment claim, her constructive discharge claim

necessarily fails, *see, e.g.*, *McKeithan v. Boarman*, No. 11-5247, 2012 WL 1450565, at *1 (D.C. Cir. Apr. 12, 2012) (per curiam) (mem.) (explaining that the "district court correctly determined [that] [plaintiff] failed to state a claim of constructive discharge, because he failed to make out an underlying predicate claim of hostile work environment").

**B.    Leave to Amend**

Because the Court grants the USDA's Rule 12(c) motion to dismiss Nichols's amended complaint, the Court must decide whether to afford Nichols a third opportunity to state a claim. Although Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely" grant a plaintiff leave to amend "when justice so requires," when "deciding whether to allow a party to amend a complaint, . . . courts may consider . . . 'repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment,'" *Abulhawa v. U.S. Dep't of the Treasury*, 15-cv-2186, 2017 WL 883609, at *4 (D.D.C. Mar. 4, 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Here, the Court has already permitted Nichols to amend her complaint, and, as explained above, her amended pleading does not cure—and, in fact, scarcely addresses—the shortcomings noted in the Court's prior opinion.  The present opinion, moreover, does not turn on any legal principle or omission in Nichols's pleadings that was not apparent from the Court's earlier opinion.  Under these circumstances, the Court concludes that the ends of justice would not be served by simply repeating a process that has already failed to cure precisely the same deficiencies.  *See Nichols v. Holder*, 938 F. Supp. 2d 97, 103 (D.D.C. 2013) (dismissing, in a different action, Nichols's amended complaint because, after "enjoy[ing] numerous opportunities to present her claims," she had failed to rectify the deficiencies identified by the court).

**CONCLUSION**

For these reasons, the Court concludes that Nichols's amended complaint fails to state a claim for race, sex, or age discrimination.[6] Accordingly, the Court will **DENY** the USDA's motion for partial summary judgment, will **GRANT** its motion for judgment on the pleadings, and will **DISMISS** Nichols's amended complaint with prejudice.

A separate order will issue.

                                              /s/ Randolph D. Moss
                                              RANDOLPH D. MOSS
                                              United States District Judge

Date:  March 24, 2017

---

[6] To the extent Nichols's amended complaint seeks to reassert any claims relating to the processing of her administrative complaint, *see* Dkt. 23 at 10–11 (Am. Compl. ¶¶ 38–40), those claims fail for the same reason the Court noted in its earlier decision:  The "USDA's alleged failure to follow the EEOC regulations regarding the administrative processing of [Nichols's] claim is not actionable [because,] [a]s the D.C. Circuit has explained, there is 'no cause of action . . . for challenges to [administrative] processing of [an employment discrimination] claim .' . . . [T]he remedy available to the plaintiff is to file suit against her employer in federal court," *Nichols I*, 2015 WL 9581799, at *13 (quoting *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam)).